**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**DAVID KIMBLE,**

         **Plaintiff,**

  v.               **1:18-CV-575
                      (FJS/DJS)**

**KINGSTON CITY SCHOOL DISTRICT,**

         **Defendant.**

---

**APPEARANCES**            **OF COUNSEL**

**SUSSMAN & ASSOCIATES**       **MICHAEL H. SUSSMAN, ESQ.**
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924
Attorneys for Plaintiff

**SHAW, PERELSON, MAY**       **MARK C. RUSHFIELD, ESQ.**
**& LAMBERT, LLP**
21 Van Wagner Road
Poughkeepsie, New York 12603
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  Pending before the Court is Defendant's motion to dismiss or, in the alternative, for necessary joinder of parties. *See* Dkt. No. 9.

## II. BACKGROUND[1]

In his complaint, Plaintiff alleges that Defendant Kingston City School District ("Defendant District") violated his constitutional right to intimate association and his right to seek redress and petition the government as guaranteed by the First Amendment to the United States Constitution and that Defendant District retaliated against him for exercising those rights. *See generally* Dkt. No. 1, Complaint.

During the 2016-2017 school year, Plaintiff, who is the natural father of MK, a student who attends school in Defendant District, was a police officer for the Town of Ulster. *See id.* at ¶¶ 4-5. During the 2015-2016 and 2016-2017 school years, Plaintiff also worked as a school resource officer for Defendant District, assigned to Miller Middle School. *See id.* at ¶ 7.

In or about March 2017, Plaintiff informed his supervisor that his son MK, a student in Defendant District, was being bullied in retaliation for Plaintiff's performance of his duties as a school resource officer. *See id.* at ¶ 13. Specifically, Plaintiff warned Defendant District's Director of Security of threats against his son from students with whom Plaintiff had interacted during his employment. *See id.* at ¶ 14. Plaintiff alleges that Defendant District took inadequate measures to protect his son; and, as a result, other students attacked and injured his son. *See id.* at ¶¶ 15-16.

As a result of Defendant District's failure to respond to his requests for assistance on behalf of his son and the attack that resulted, Plaintiff filed a Notice of Claim in late June 2017 against Defendant District on behalf of his son. *See id.* at ¶¶ 17, 19. The filing of that Notice of Claim was a prerequisite to Plaintiff initiating legal action against Defendant District. *See id.* at ¶ 18.

---

[1] Since this is a motion to dismiss, the facts in this section are based on the allegations in Plaintiff's complaint.

In late March-early April 2017, as a parent, Plaintiff advocated for his son, advising the high school's School Resource Officer about threats against his son and demanding that Defendant District respond appropriately to such threats. *See id.* at ¶ 22. Following this advocacy, Defendant District did not approve Plaintiff as a provisional school resource officer, although, on May 8, 2017, the Chief of Security noted that "we're still a little short staffed." *See id.* at ¶ 23. On May 18, 2017, Defendant District's School Board President rejected Plaintiff's request, made as a parent, to transfer his son, at Defendant District's expense, to another school district. *See id.* at ¶ 24.

On May 27, 2017, Plaintiff responded affirmatively to the Civil Service Commission's canvass indicating his interest in being appointed to the position of school security officer. *See id.* at ¶ 28. On June 19, 2017, Plaintiff requested assignment as a school security officer, noting his availability for certain days in July and August 2017. *See id.* at ¶ 29. The Chief of Security advised Plaintiff that he needed to go through the "normal hiring" procedure before being assigned during the summer months. *See id.* at ¶ 30.

On July 1, 2017, reflecting Plaintiff's interest in obtaining summer assignments as a school security officer, Parker, Defendant District's Chief of Security, again circulated a schedule that noted that Plaintiff's application for employment was pending and acknowledging that its approval might cause alteration in the schedule. *See id.* at ¶ 31. On July 17, 2017, Plaintiff pre-enrolled for appointment as a school security officer. *See id.* at ¶ 32. Defendant District scheduled Plaintiff's appointment as a school security officer for July 27, 2017. *See id.* at ¶ 33. On July 22, 2017, Plaintiff completed all the paperwork necessary for his appointment at Defendant District's Central Office, and Defendant District's agent fingerprinted Plaintiff for the position of school security officer. *See id.* at ¶¶ 34-35.

On or about July 27, 2017, Defendant District advised Plaintiff that he would not be appointed as a school security officer or permitted to continue his assignment as a school resource officer for the Kingston public schools because of his son's attendance in the school district. *See id.* at ¶ 36. Abiding by Defendant District's direction, Plaintiff's employer, the Town of Ulster Police Department, reassigned Plaintiff to road patrol. *See id.* at ¶ 37. Plaintiff's police chief advised him that he was no longer welcome to work with Defendant District's schools. *See id.* at ¶ 38. Thereafter, Defendant District hired two individuals who lacked his experience and expertise in law enforcement or his knowledge of the Kingston City School District as school security officers. *See id.* at ¶ 39.

Plaintiff alleges that Defendant District disallowed him from serving as a school security officer and no longer allowed him to serve as a school resource officer because he had advocated for his son and filed a notice of claim against it. *See id.* at ¶¶ 40-41. Plaintiff asserts that he could have continued his service as a school resource officer employed by the Town of Ulster and concurrently accepted hours as a school security officer employed by Defendant District. *See id.* at ¶ 42. Working solely as a police officer for the Town of Ulster, Plaintiff has lost income he otherwise would have earned had he been appointed as a school security officer. *See id.* at ¶ 43. Finally, Plaintiff contends that he has been deprived of the satisfaction of working with students and emotionally anguished by being punished for advocating as a father for his son. *See id.* at ¶ 44.

Based on these allegations, Plaintiff asserts the following causes of action:

> (1) by disqualifying Plaintiff for appointment as a school security officer because of his advocacy for his son, Defendant District punished him for engaging in his right to petition in violation of the First Amendment to the United States Constitution
>
> (2) by disqualifying Plaintiff for appointment as a school security

officer because of his son's attendance in Defendant District, Defendant punished Plaintiff because of his intimate association with his son in violation of the First Amendment to the United States Constitution

(3) by demanding that his employer reassign him from his duties as a school resource officer, Defendant District violated his right to petition as protected by the First Amendment to the United States Constitution

(4) by demanding that his employer reassign him from his duties as a school resource officer, Defendant District violated his right to intimate association as protected by the First Amendment to the United States Constitution

*See generally* Complaint.

### III. DISCUSSION

**A.**     **Legal standard governing motions to dismiss**

A court must dismiss a complaint if it fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). When addressing a motion to dismiss, "the court must assume the truth of 'well-pleaded factual allegations' and 'determine whether they plausibly give rise to an entitlement to relief.'" *Richardson-Holness v. Alexander*, 161 F. Supp. 3d 170, 175 (E.D.N.Y. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "This plausibility standard cannot be met with '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* (quoting [*Iqbal*, 556 U.S.] at 678). "Nor is it sufficient to plead facts showing 'the sheer possibility that a defendant has acted unlawfully.'" *Id.* (quoting [*Iqbal*, 556 U.S. at 678]). "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility.'" *Id.* (quoting [*Iqbal*, 556 U.S. at 678] (internal quotation marks omitted)). "To push a claim across that line, a

plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting [*Iqbal*, 556 U.S. at 678]).

**B.     Municipal liability under 42 U.S.C. § 1983**

"To hold a municipality liable under Section 1983, a plaintiff must establish both [(1)] a violation of his or her constitutional rights and [(2)] that the violation was caused by a municipal policy or custom." *Bradley v. City of New York*, No. 08-CV-1106 (NGG), 2009 WL 1703237, *2 (E.D.N.Y. June 18, 2009) (citing [*Monell*, 436 U.S.] at 690-91; *Bd. of the County Comm'rs v. Brown*, 520 U.S. 400, 404 (1997) (noting that the policy or custom must be the actual "moving force" behind the alleged wrongs)) (other citation omitted). The Court will address each of these elements in turn.

### *1. Plaintiff's First Amendment "freedom to petition the government" claims*

"[A] public employee who seeks to recover on the ground that he has been discharged because of the exercise of his First Amendment speech rights must establish, as an initial matter, that his speech may be '"fairly characterized as constituting speech on a matter of public concern."'" *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir. 1993) (quotation and other citation omitted). "'When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. at 146, 103 S. Ct. at 2897).

"Whether an employee's speech addresses a matter of public concern is a question of law for

the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999) (citations omitted). "In reaching this decision, the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Id.* at 163-64 (citing *Curtis*, 147 F.3d at 1212).

Finally, "*Connick* made clear that courts must look behind pretextual 'public concern' rationales proffered by plaintiffs and attempt to discern whether their conduct, taken as a whole, was actually meant to address matters of public concern or was simply a vehicle for furthering private interests." *Pappas v. Giuliani*, 118 F. Supp. 2d 433, 444 (S.D.N.Y. 2000) (citing *Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999) ("speaking up on a topic that may be deemed one of public importance does not automatically mean the employee's statements address a matter of public concern as that term is employed in Connick.") [citation omitted] . . . Rather, we "must instead delve deeper into the precise content, form, and context of speech that admittedly may be of some interest to the public." (*citing Cliff v. Board of Sch. Comm'rs of City of Indianapolis*, 42 F.3d 403, 410 (7th Cir. 1994))) (other citation and footnote omitted).

Although Plaintiff argues, in his memorandum of law, that his speech addressed a matter of public concern, *i.e.*, bullying in schools, the allegations in his complaint, as well as in the Notice of Claim he filed on his son's behalf, belie this argument. Specifically, in his complaint, Plaintiff alleges the following:

> "In or about March 2017, plaintiff **informed his supervisor that his son**, then a student within the school district, **was being subjected to bullying** in retaliation for plaintiff's performance of his duties as a school resource officer." *See* Complaint at ¶ 13 (emphasis added).
>
> "Specifically, plaintiff warned the district's director of security of

**threats against his son** from students who [sic] plaintiff had
interacted with during his employment." *See id.* at ¶ 14 (emphasis
added).

"Due to the defendant district's delinquent failure to respond to **his
requests for assistance on behalf of his son** and the attack thereby
enabled, plaintiff filed a notice of claim against the defendant on
behalf of his son." *See id.* at ¶ 17 (emphasis added).

"In late March-early April 2017, **as a parent, plaintiff advocated for
his son**, advising the high school's School Resource Officer about
threats against MK and **demanding an appropriate response by
defendant to such threats**." *See id.* at ¶ 22 (emphasis added).

"On May 18, 2017, defendant's School Board President rejected
**plaintiff's request – made as a parent** – to transfer his son, at
defendant's expense, to another school district." *See id.* at ¶ 24
(emphasis added).

"Defendant disallowed Plaintiff from serving as a school security
officer because **he advocated for his son and filed a notice of claim
against it.**" *See id.* at ¶ 40 (emphasis added).

"Defendant disinvited plaintiff from serving as a school resource
officer **because he advocated for his son and filed a notice of claim
against it.**" *See id.* at ¶ 41 (emphasis added).

Likewise, in the Notice of Claim, which he filed as legal guardian for his son, Plaintiff asserted the following:

"Toward the end of [the 2015-2016] school year, **[MK] suffered
from repeated instances of bullying** during which other students
explicitly mentioned his father's role as the school resource officer."
*See* Dkt. No. 9-5 at ¶ 4 (emphasis added).

"On March 31, 2017, another student, then known to [MK] only as
Chris, told him that he hoped that 'your fat pig father dies of a heart
attack.' Chris also stated to [MK] that if he sees [Plaintiff], he will
spit in his face and bash [MK's] head into a locker. . . . **Concerned
for his son's safety**, on April 3, 2017, the next school day, [Plaintiff]
kept [MK] home from school." *See id.* at ¶¶ 6-7 (emphasis added).

"On that same day, April 3, 2017, [Plaintiff] wrote an email to

-8-

> LeShawn Parker, the district's director of security, and Harry Woltman, the school resource officer assigned to Kingston High School. In his email, [Plaintiff] **provided notice to these district agents that his son had been threatened by Chris on the prior school day and asked for the implementation of a safety plan upon his son's return**." *See id.* at ¶ 8 (emphasis added).
>
> "In March 2017, [P]laintiff **sent emails to school administrators advising them that his son was being taunted and physically assaulted**." *See id.* at ¶ 9 (emphasis added).

As these allegations clearly demonstrate, Plaintiff's speech cannot fairly be characterized as constituting speech on a matter of public concern. Rather, as Plaintiff acknowledges on more than one occasion, he was speaking "as a parent" advocating on his son's behalf. Therefore, taking into consideration the content, form and context of Plaintiff's statements, it is clear that his intention was to further a personal interest, *i.e.*, protecting his son from alleged bullying at the hands of other students. Nowhere in his complaint or Notice of Claim does Plaintiff indicate a concern about the issue of bullying in general, nor does he request that Defendant District address that issue or undertake any action to prevent bullying against all students in the District.

In addition, other than filing a Notice of Claim, Plaintiff made his complaints about the bullying of his son privately, *i.e.,* in the form of emails to or conversations with employees of Defendant District, rather than in a public forum. There is nothing in Plaintiff's complaint or in his Notice of Claim that plausibly suggests that Plaintiff intended to voice his discontent about the broader issue of bullying to the public at large. Furthermore, although the issue of bullying in schools and elsewhere is certainly a matter of public interest, there is nothing in Plaintiff's complaint or his Notice of Claim to suggest that his speech was related to his desire to raise this issue as one that would be of interest to the community at large. Rather, his complaints concerned **only** his son's mistreatment at the hands of other students, which Plaintiff asserts was the result of

Plaintiff's role as a School Resource Officer.

For all these reasons, the Court finds that Plaintiff has failed to plead a plausible violation of his First Amendment right to petition the government. As a result, the Court also finds that Plaintiff's claim that Defendant District retaliated against him for engaging in this unprotected speech fails because "[t]o establish a retaliation claim in violation of the First Amendment right to free speech, a plaintiff must show [among other things that] (1) his speech addressed a matter of public concern; . . . ." *Singer v. Ferro*, No. 1:09-CV-690, 2011 WL 4074177, *5 (N.D.N.Y. Sept. 13, 2011) (citing *Singh v. City of N.Y.*, 524 F.3d 361, 372 (2d Cir. 2008)); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 190 (2d Cir. 2008) (stating that "[r]etaliation against the airing of generally personal grievances is not brought within the protection of the First Amendment by 'the mere fact that one or two of [a public employee's] comments could be construed broadly to implicate matters of public concern'" (quoting *Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991))).[2] Accordingly, the Court grants Defendant District's motion to dismiss Plaintiff's First Amendment claim that Defendant District violated his right to petition the government and retaliated against him for exercising that right.

---

[2] In *Ezekwo*, the court held that, "[a]lthough the quality of a physician-training program may affect the public . . . the plaintiff 'was not on a mission to protect the public welfare. Rather her primary aim was to protect her own reputation and individual development as a doctor.'" *Ruotolo*, 514 F.3d at 190 (quoting [*Ezekwo*, 940 F.2d at 781]); (citing *Tiltti v. Weise*, 155 F.3d 596, 603 (2d Cir. 1998) (finding no public concern in complaints about working conditions made by customs officers who alleged retaliation when they were reassigned, despite their claim that the relocation would adversely affect homeland security)) (other citation omitted); *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986) (holding that "a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run" (citation omitted)).

### *2. Plaintiff's First Amendment "intimate association" claims*

Within the Second Circuit, the case law regarding the issue of whether the standard applicable to a First Amendment intimate association claim is identical to that applied to freedom of speech claims is not clear. *See Rissetto v. Cnty. of Clinton*, No. 8:15-CV-0720 (GTS/CFH), 2016 WL 4530473, *25 (N.D.N.Y. Aug. 29, 2016). "'The right to intimate association protects the close ties between individuals from inappropriate interference by the power of the state.'" *Id.* (quoting *Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of New York*, 502 F.3d 136, 143 (2d Cir. 2007)). "'Although both the Supreme Court and the Second Circuit have recognized a right of intimate association, the parameters of that right are anything but clear.'" *Id.* (quoting *Toussie v. Cty. of Suffolk*, 806 F. Supp. 2d 558, 589 (E.D.N.Y. 2011) (citing *Poleo-Keefe v. Bergeron*, 06-CV-0221, 2008 WL 3992636, at *9 [D. Vt. Aug. 28, 2008] [noting that "the boundaries of [the] right to freedom of intimate association are largely unsettled and the Second Circuit has declined to articulate the level of review due to actions that infringe upon it"])) (other citations and footnote omitted).

"In any event, the Second Circuit has held that 'a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association.'" *Rissetto*, 2016 WL 4530473, at *26 (quoting *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999) ("[T]he New York action challenged here . . . seeks to penalize [the plaintiff] with loss of his job because of its displeasure with the conduct of his wife. If the First Amendment accords an individual some right to maintain an intimate marital relationship free of undue state interference, Adler's claim properly invokes the protection of that Amendment.")) (other citations omitted). Furthermore, "'[w]here [, as in this

case,] a plaintiff is allegedly retaliated against for the First Amendment activities of a family member'" and asserts a claim based on intimate association, the courts in the Second Circuit have considered the claim as deriving from the First Amendment. *Garten v. Hochman*, No. 08 Civ. 9425 (PGG), 2010 WL 2465479, *3 (S.D.N.Y. June 16, 2010) (quoting *Agostino*, 2008 WL 4906140, at *9); *see also Sutton v. Vill. of Valley Stream*, 96 F. Supp. 2d 189, 192-93 (E.D.N.Y. 2000) (finding right of intimate association applies where plaintiff father alleged termination of employment in retaliation for his son's exercise of the right of free speech).

Plaintiff's complaint fails plausibly to suggest a claim that Defendant District violated his First Amendment right to intimate association with his son MK or that Defendant District retaliated against him for the exercise of that right. Plaintiff's complaint does not allege any facts to suggest that his son MK exercised his right to free speech and that, as a result Defendant District took adverse action against Plaintiff. To the contrary, Plaintiff claims that **he** exercised his right to free speech and that Defendant District took an adverse action against **him** for doing so. As pled, these claims are duplicative of his other First Amendment claims and do not raise an intimate association claim under the First Amendment. Accordingly, the Court grants Defendant District's motion to dismiss Plaintiff's First Amendment claim that Defendant District violated his right to intimate association and retaliated against him for exercising that right.

### 3. Municipal policy or custom

Given the Court's conclusion that Plaintiff has not pled a plausible claim that he suffered a violation of his rights under the First Amendment, the Court does not need to address the second element of Plaintiff's municipal liability claim against Defendant District. Nonetheless, in the interest of completeness, the Court will briefly address this element of Plaintiff's claims.

It is well-established that a plaintiff may not hold a municipality liable under 42 U.S.C. § 1983 on the basis of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978); *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir. 1992) (stating that "[t]he Supreme Court has made clear that § 1983 does not subject municipalities to liability whenever municipal employees go astray. It is only when the municipality itself wreaks injury on its citizens that municipal liability is appropriate."). Rather,

> to establish municipal liability under Section 1983, a plaintiff must show one of the following: (1) a formal policy, promulgated or adopted by the City . . .; (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights . . .; or (3) the existence of an unlawful practice by subordinate officials was so permanent or well settled so as to constitute a 'custom or usage' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials . . . .

*Bradley*, 2009 WL 1703237, at *2 (internal citations omitted).

Moreover, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

"In terms of what a complaint must allege to survive a Motion to Dismiss, the Second

Circuit has held that "'the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Bradley*, 2009 WL 1703237, at *3 (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)); (citing *Smith v. City of New York*, 290 F. Supp. 2d 317, 322 (E.D.N.Y. 2003) (holding that a conclusory, boilerplate assertion of a municipal policy or custom was insufficient to survive motion to dismiss); *Econ. Opportunity Comm'n v. County of Nassau, inc.*, 47 F. Supp. 2d 353, 370 (E.D.N.Y. 1999) (dismissing municipal liability claim where plaintiffs "d[id] not proffer any facts in support of the conclusory allegation that the defendants' conduct amounts to a custom or policy, or that this custom or policy caused the plaintiffs' injuries")). Instead, a plaintiff must "allege actual conduct by a municipal policymaker." *Walker*, 974 F.2d at 296; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (stating that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered" (footnote omitted)).

Plaintiff's complaint is devoid of any factual allegations that plausibly suggest that a policy or custom of Defendant District caused the alleged violation of his constitutional rights. First, based on the allegations in his complaint, it is clear that Plaintiff is relying on the theory "that an official with policymaking authority took action or made a specific decision which caused the alleged violation of his constitutional rights." *Bradley*, 2009 WL 1703237, at *2 (citation omitted). However, the only individual whom Plaintiff specifically identifies in his complaint is Parker, Defendant District's Chief of Security, *see* Dkt. No. 1 at ¶ 31; and he does not allege that Parker was

the individual who made the decision not to hire him as a school security officer or that, even if Parker were that individual, he was the policymaking authority with regard to that decision. Nor does Plaintiff allege any state law that would support a claim that Parker, in his capacity as Defendant District's Chief of Security, was a final policy maker with regard to this issue.

For all these reasons, the Court finds that, even if Plaintiff had stated a plausible claim that Defendant District violated his First Amendment rights, which he did not, he has not stated sufficient factual matter from which the Court could reasonably infer that such violations were the result of any policy or custom of Defendant District. Rather, his complaint, at most, consists of "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and is devoid of any "'factual content that [would] allow[] the court to draw the reasonable inference that . . . [D]efendant is liable for the misconduct alleged.'" *Richardson-Holness*, 161 F. Supp. 3d at 175 (quotations omitted). Accordingly, the Court grants Defendant District's motion to dismiss Plaintiff's complaint in its entirety.[3]

### IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss Plaintiff's complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 9, is

---

[3] Since the Court has granted Defendant District's motion to dismiss Plaintiff's complaint in its entirety, the Court need not address Defendant District's alternative motion for joinder of the Town of Ulster and the Town of Ulster Police Department as necessary parties because that motion is now moot.

**GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 19, 2019
       Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Judge